UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

ERIC C. McCURTIS,

                Plaintiff,

v.                                      Case No. 16-cv-8-pp

NANCY A. BERRYHILL,[1]
Acting Commissioner of Social Security,

                Defendant.

---

**DECISION AND ORDER REVERSING THE COMMISSIONER'S DENIAL OF SOCIAL SECURITY DISABILITY BENEFITS AND REMANDING FOR FURTHER PROCEEDINGS PURSUANT TO SENTENCE FOUR OF 42 U.S.C. § 405(g)**

---

      Eric McCurtis has appealed the denial of his application for Social Security Disability benefits. Dkt. No. 1. The administrative law judge (ALJ) found that the plaintiff's degenerative disc disease of the neck was a severe impairment—one that caused "more than a minimal effect on the [plaintiff's] ability to perform basic work activities" under 20 C.F.R. § 404.1520(c). Dkt. No. 13-1 at 22. The ALJ denied the plaintiff's application for benefits, however, reasoning that the plaintiff had the residual functional capacity to perform a significant number of jobs that exist in the national economy. Id. at 23-27.

      The statutory definition of disability in the Social Security Act has two parts. "First, it requires a certain kind of inability, namely, an inability to

---

[1] At the time the plaintiff filed his appeal, Carolyn Colvin was the acting commissioner of the Social Security Administration. Nancy A. Berryhill succeeded Carolyn Colvin as the acting commissioner on January 23, 2017.

1

engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability." Barnhart v. Walton, 535 U.S. 212, 217 (2002). On appeal, the district court's role is to determine whether the ALJ applied the correct legal standards, and whether the ALJ's decision is supported by substantial evidence. Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Barnett v. Barnhart, 381 F.3d 664, 668 (7th Cir. 2004).

    The plaintiff was forty-eight years old in 2014, when he appeared and testified, unrepresented, at the hearing before the ALJ. Dkt. No. 13-1 at 23. At the time, he was living in a two-story home with his mother. Id. In December 2009, the plaintiff had been in a car accident, resulting in "injuries causing neck and left arm pain and numbness in the lower back." Id. at 24. He underwent surgery in April of 2011—a C3-C5 decompressive laminectomy with lateral mass screw placement and laminectomy. Id. The plaintiff testified at the 2014 hearing that he "continue[d] to have intermittent difficulties with his left leg going numb with activity, numbness in his left hand, and hypersensitivity in his right hand." Id. The ALJ concluded, however, that the "objective medical findings are not consistent with a finding of total disability. Rather, [the plaintiff] benefitted from treatment, and was able to manage a range of daily activity and functioning." Id. at 27. According to the ALJ, the plaintiff "remained capable of performing a range of sedentary work with appropriate

additional accommodations for symptoms of his physical impairments, . . . ." Id.

At the hearing, the ALJ posed hypotheticals to a vocational expert in an effort to ascertain the plaintiff's ability to perform jobs available in the national economy. Dkt. No. 13-1 at 85-91. The plaintiff argues on appeal that the ALJ erred by failing to incorporate the following limitations into the hypotheticals: occasional gripping, grasping, fingering, and fine manipulation with his hands, in addition to an option to sit/stand at will with the use of an assistive device for walking activities. The Commissioner counters that the ALJ is required to include in the hypotheticals only such limitations as are supported in the record and that the ALJ finds credible. The limitations the plaintiff claims the ALJ failed to include, however, are supported by a Functional Capacity Evaluation performed on January 29, 2014. Dkt. No. 13-2 at 172. The ALJ afforded "substantial weight" to the FCE, without qualification, Dkt. No. 13-1 at 26, yet he failed to include the above-mentioned limitations in his hypotheticals to the vocational expert. At a minimum, remand is necessary for the ALJ to clarify this apparent discrepancy.

The court also finds that the ALJ erred when he rejected the opinion of the plaintiff's treating neurosurgeon, Dr. Zikel. According to Dr. Zikel, the plaintiff is unable to work more than four hours per day and requires frequent breaks. Dkt. No. 13-2 at 160-61. A treating physician's opinion is entitled to controlling weight if it is well-supported by medical findings and is not inconsistent with other substantial record evidence. Yurt v. Colvin, 758 F.3d

850, 860 (7th Cir. 2014). The ALJ did not afford the treating physician's opinion that weight, however, because he found that Dr. Zikel's opinion was "not consistent with the claimant's treatment history, including routine and conservative care, largely benign clinical findings with the exception of neck stiffness, or the claimant's self-reported ability to carry out all of his activities of daily living with only mild restriction." Dkt. No. 13-1 at 23.

In reaching this conclusion, the ALJ equated the plaintiff's ability to undertake basic activities of daily living, such as doing laundry, washing dishes, and performing other household chores, with the ability to work on a full-time basis. This analysis ignores the "critical differences between activities of daily living and activities in a full-time job . . . ." Bjornson v. Astrue, 671 F.3d 640, 647 (7th Cir. 2012). A person "has more flexibility in scheduling the former than the latter, can get help from other persons . . . , and is not held to a minimum standard of performance, as [he] would be by an employer." Id. The plaintiff, for example, testified that he can do most household chores, but it "just takes [him] longer." Dkt. No. 13-1 at 70.

For this reason, the ALJ's credibility assessment was not supported by substantial evidence. See SSR 96-7p (listing factors to consider when assessing the credibility of an individual's statements, including the individual's daily activities). In describing his daily routine, the plaintiff explained that he gets up in the morning, does some stretches for physical therapy, then showers and cools down. Dkt. No. 13-1 at 69-70. The need for a "cool down" period is consistent with Dr. Zikel's opinion that the plaintiff requires frequent breaks.

4

Dkt. No. 13-2 at 160-61. Ultimately, the ALJ relied on the plaintiff's ability to perform basic activities of daily living, but ignored the difficulties the plaintiff encountered while doing them. The ALJ also emphasized the fact that the plaintiff continued looking for work past his onset date, but the plaintiff made clear that he was looking for work within the restrictions imposed by Dr. Zikel, *i.e.*, part-time work. See SSR 96-8p (person who cannot work full-time is disabled).

Finally, the plaintiff argues that the ALJ did not develop a full and fair record because he was not represented by counsel. See Smith v. Apfel, 231 F.3d 433, 437 (7th Cir. 2000). The plaintiff did not elaborate much on this argument, but because this court is remanding the case to the ALJ for further proceedings, it is worth noting that an ALJ deciding on the application of a *pro se* claimant may need to focus more on development of the record.

The court **ORDERS** that the Commissioner's denial of benefits is **REVERSED**, and the court **REMANDS** this case for further proceedings pursuant to 42 U.S.C. §405(g) (sentence four). The court directs the clerk of court to enter judgment accordingly.

Dated in Milwaukee, Wisconsin this 21st day of February, 2017.

BY THE COURT:

_____
HON. PAMELA PEPPER
United States District Judge